**QWEST COMMUNICATIONS CORPORATION,**
Plaintiff

v.

**MARYLAND–NATIONAL CAPITAL PARK & PLANNING COMMISSION, Defendant.**

**Case No. 07CV2199.**

United States District Court,
D. Maryland.

Feb. 18, 2009.

Brian Coleman, Drinker Biddle and Reath LLP, Washington, DC, David R. Goodnight, Stoel Rives LLP, Seattle, WA, Thomas W. Snyder, Stoel Rives LLP, Denver, CO, for Plaintiff.

Jared Michael McCarthy, Office of General Counsel, William Charles Dickerson, Maryland National Capital Park and Planning Commission, Riverdale, MD, for Defendant.

## MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

On August 17, 2007, Plaintiff Qwest Communications Corporation ("Qwest") filed its original complaint against the Defendant, the Maryland–National Capital Park and Planning Commission ("Commission"). In that complaint, Qwest sought a declaration that a proposed license agreement demanded by the Commission for the use of a right-of-way in Little Falls Park, as well as the compensation proposed under that agreement, were preempted under the Federal Telecommunications Act, 47 U.S.C. § 253. The complaint also requested declaratory relief concerning certain provisions of that agreement, and asserted a claim for unjust enrichment relating to the alleged invalidity of the Commission's demand for compensation.

The Commission filed a motion to dismiss the complaint, and after full briefing, the Court conducted a hearing on the motion on February 8, 2008. In a memorandum opinion issued May 16, 2008, this Court concluded that the allegations of the original complaint "appear[ed] to amount to no more than labels and conclusions and the formalistic recitation of the elements of a cause of action .... the Court is left with only a divining rod, and something

more is required to state a claim." (553 F.Supp.2d 572, 576 (D.Md.2008)). Accordingly, the Court granted the Commission's motion to dismiss, but granted Qwest leave to amend its complaint within thirty days.

Qwest filed its First Amended Complaint on June 18, 2008, and the Commission again filed a motion to dismiss. After a second round of briefing, the Court heard arguments on the motion on December 1, 2008. In its motion, the Commission argues that (1) the Federal Telecommunications Act does not apply to it because the Commission is a special purpose entity that does not control, maintain, or regulate the general public rights-of-way; (2) because the Commission's authority is limited to parkland and does not include thousands of miles of rights-of-way available in other areas of Montgomery County, the actions of the Commission cannot, as a matter of law, "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service"; and (3) the unjust enrichment claim fails as a matter of law.

## LEGAL STANDARD

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court declared the "retirement" of the long-cited "no set of facts" standard first announced in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).[1] The Court in *Twombly* looked instead to whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," *id.* at

---

**1.** *Conley* stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."

1974, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 1964–65. In sum, "factual allegations must be enough to raise a right to relief above a speculative level." *Id.* at 1965.

No matter the standard used, the Court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and must construe factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson County,* 407 F.3d 266, 268 (4th Cir.2005). Nevertheless, the Court is not required to accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Veney v. Wyche,* 293 F.3d 726 (4th Cir.2002).

### ANALYSIS

When the parties were before the Court on the first motion to dismiss filed by the Commission, the nature of this case was far less clear than it is now. The First Amended Complaint is significantly more detailed than the original complaint and includes a large number of attachments that clarify the nature of the controversy before the court.

Importantly, the amended complaint makes clear that Little Falls Parkway is a road in use by the general public that is constructed on Commission property that is part of, and on the edge of, Little Falls Park. For all intents and purposes, it looks like any other state or county road. However, it is in fact owned by the Commission, and the area in which the conduits in question were installed runs parallel to the paved right-of-way.

This is not a case in which the Commission owns and operates farms or parks, and does not generally license rights-of-way across them, and a third party randomly comes along and asks to put a right-of-way across one of its properties. Instead, the land in question is a classic public right-of-way adjacent to land developed as a park and a parkway. The Commission is not a stranger to the business of authorizing private entities to make use of its various properties for profit-making purposes. The Commission even employs someone with the title of "Administrative Supervisor of the Enterprise Division" who deals with licensing matters, such as food and beverage stands in parks, and licensing the use of conduits on Commission properties.

It is clear that, however characterized—as a state or local agency, or a hybrid—the Commission does have rights-of-way that it manages, including a significant one on the land adjacent to Little Falls Parkway, which is used by a number of entities in the same way that rights-of-way are used along other roads in Montgomery County. Thus, if one were to impose a prohibitively high level of compensation, this could have the effect of prohibiting the ability of the entity to provide an interstate or intrastate telecommunications service.

The Court does not decide, at least at the pleadings stage, whether the safe harbor provision in the Federal Telecommunications Act would save the Commission's attempts to recover the level of compensation that it seeks. Clearly, there is a safe harbor that protects the authority of state and local governments to manage public rights-of-way and to require fair and reasonable compensation on a competitively

neutral and nondiscriminatory basis. 47 U.S.C. § 253(c). But at this stage, drawing all inferences—as the Court must—in favor of the non-moving party, the amended complaint adequately alleges that the actions of the Commission go beyond fair and reasonable compensation. Therefore, the amended complaint does state a cause of action.

Furthermore, the Court finds that the matter has not been rendered moot by Qwest's apparent decision to "build around" this problem. There is still a question of possible damages that may have been sustained by Qwest in this case. And, as the Court concludes that the Telecommunication Act claim is viable, the unjust enrichment claim remains viable as well.

The Commission has decided that the compensation level being derived from the use of the conduit at issue in this case is insufficient and should be increased by 600 percent. On a motion to dismiss, the Court cannot decide whether the current level of compensation, or even six times that level, is excessive. Suffice it to say that what has been alleged here is enough to allege a violation of the Act, and for that reason the Court concludes that the Motion to Dismiss should be denied.[2]

---

**2.** The Order denying Defendant's motion was entered on December 1, 2008.